Allen N. Lashner, Inc. *v.* Commonwealth of Pennsylvania, Department of Highways.

Argued December 7, 1970, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Manderino, Mencer and Barbieri (who has since been appointed to the Supreme Court of Pennsylvania and did not participate in the decision)..

*Erwin Lodge,* with him *Bernard Glassman, Lodge, Goldman & Glassman,* for appellant.

*Edward A. Hosey,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Fred Speaker,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., March 22, 1971:

In May 1966, Allan (Allen) N. Lashner, Inc. and the Commonwealth of Pennsylvania, Department of Highways, entered into a contract providing for the demolition of certain premises within the right-of-way line of the Delaware Expressway in the City of Philadelphia. Implementing the contract were certain "General Specifications" and "Department of Highways Specifications, Form 408" of 1960. These provided, *inter alia,* that the demolition contractor is to obtain title to all machinery and equipment on the demolition site as salvage; that no claim would be entertained by the Board of Arbitration of Claims unless the claim was made within three months of the notice date of the Commonwealth's final computation of payment due; and, that the time limitation governing submission of claims to the Board would commence with the notice of the final computation.

On August 10, 1967, less than one month from the notification of payment due, Lashner filed a claim with the Board averring that on July 5, 1966, the Commonwealth sold at public auction several items of machinery which in fact were salvage items belonging to Lashner. There is no dispute that the equipment which was sold for three thousand eight hundred dollars was located upon the demolition site (right-of-way). The conflict which is presented to us arose when the Commonwealth claimed that a shear which was sold for ten thousand dollars was not located on the demolition site. More-

over, the Commonwealth argued before the Board that Lashner's claim accrued on July 5, 1966, the date of the sale and hence his claim not having been filed with the Board within the six month statutory period provided by Section 6 of the Act of 1937, P. L. 728, as amended, 72 P.S. §4651-6 was untimely as to all of the equipment sold.

"The Board shall have no power and exercise no jurisdiction over a claim asserted against the Commonwealth unless the claim shall have been filed within six months after it accrued." 72 P.S. 4651-6.

Curiously, the Board held that it did not have jurisdiction, finding that the claim did in fact accrue July 5, 1966, but nevertheless proceeded to make findings of fact based upon the evidence before it that the shear was not located on the demolition site but rather it was located on a landlocked area retained by the prior owner of the entire site. The Board, on the basis of these findings, denied the Lashner claim. This appeal followed.

## I—Jurisdiction in the Board

The Board's conclusion of law that Lashner's "claim or cause of action, if any, accrued on the date of the public auction sale" was erroneous. Under Section 6 of the Act of 1937 the jurisdictional period begins to run from the time the cause of action accrues; that is, from the time when the injured party is first able to litigate his claim. *Philadelphia, B. & W. R. Co. v. Quaker City Flour Mills Co.*, 282 Pa. 362, 127 A. 845 (1925).

Lashner has alleged that under his contract with the Commonwealth part of the consideration was his salvage rights to the equipment in question, and that under the terms of the contract there was no breach of the contract until that point in time when the Common-

wealth failed to include compensation for this equipment in its statement of final computations. It is well established that the parties to a contract can create valid conditions precedent to the right to bring an action on the contract, and that the claim will not then accrue until the condition has been performed. *Chittenholm v. Giffin*, 357 Pa. 616 (1947) ; *Tonkin v. Baum*, 114 Pa. 414 (1886). It is clear that the specifications incorporated into the contract which set the date of notification of computations as the date which commenced the running of the statute of limitations and which made the notification a prerequisite to any suit under the contract, indicate the undeniable intent of both Lashner and the Commonwealth to consider the date of notification as the accrual date of any cause of action *under the contract.*

The fact that an action for replevin or other like noncontract action may have accrued at the time the Commonwealth sold the equipment is of no moment. Lashner has elected to consider the sale a breach of his contract and to seek recovery on that basis. Since the contract provided that the action for the breach did not accrue until notification of computations, Lashner's action, brought within a month thereafter, was proper. Accordingly, the conclusion by the Board that it was without jurisdiction was erroneous.

## II—Disposition of Claims

The Commonwealth has agreed that three thousand eight hundred dollars worth of equipment belonging to Lashner under the contract was sold at auction. We therefore direct the Board to order payment of this sum in compliance with Section 9 of the Act of 1937, 72 P.S. §4651-9.

As to the claim for the shear, the Board found as fact that the shear was not located on the contract

premises. ". . . Findings of the Board as to facts, if supported by substantial evidence, shall be conclusive." Section 8, 72 P.S. §4651-8. It is not for this Court to make its own independent decision. However, the Board must consider all valid and competent evidence in reaching its determination. Assuming arguendo there is substantial evidence presented to support its conclusion, if the Board *excludes admissible, competent* testimony which might have persuaded it to reach a contrary conclusion, it has failed to perform its function properly and its weak foundation must cause its findings to fall.

The case before us presents a most unusual factual situation. The Commonwealth had condemned most of an industrial site owned by S. D. Richman Sons, Inc., leaving ownership of a small landlocked parcel with Richman. Included in the taking was equipment located on the condemned parcel only. This is what the Commonwealth sold at auction. Benjamin Richman, the prior owner, repurchased this equipment at the auction, including the shear in question. At no time has he contested the Commonwealth's title to the shear *prior to the auction.* However, at the hearing he appears as the only witness for the Commonwealth to testify that the shear was not located on the condemned parcel. Counsel for Lashner attempted to question this witness on the subject of the status of the property which gave the Commonwealth the right to sell it at auction but the Board, without reason or justification, excluded the testimony.[1] This was error for two reasons: (1) the evidence was admissible to impeach the credibility of Mr. Richman in that he had not claimed ownership to the shear in his dealings with the Commonwealth; and, (2) the evidence has direct probative value as to the location of the shear on the condemned

---

[1] See notes of testimony pages 54 through 56.

right-of-way. In a case like this one, where the only other testimony consists of self-serving statements by two interested persons, independent evidence like that excluded by the Board is of paramount value. Since this evidence was not considered by the Board in reaching its decision as to the shear, it is reversed. The claim is remanded to the Board of Arbitration of Claims for hearings consistent with this opinion.

## ORDER

AND NOW, this 22nd day of March, 1971, the order of the Board of Arbitration of Claims, made August 18, 1971, is reversed and the claim of Allan N. Lashner, Inc. is remanded to the Board for further disposition in accordance with the opinion of this Court.