Daniel JOHNSON et al., Appellants,

v.

Robert SCHRADER, State Superintendent of
Public Instruction, et al., Appellee.

No. 4084.

Supreme Court of Wyoming.

Nov. 3, 1972.

John J. Rooney, of Rooney & Horiskey, Cheyenne, for appellants.

Jerome F. Statkus, Sp. Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARK-ER, McEWAN and GUTHRIE, JJ.

McINTYRE, Chief Justice.

This case involves action initiated by citizens and taxpayers of Goshen County School Districts 3, 5, 8 and 12. The purpose of the action was to set aside as void a decision and order of the State Committee on School District Organization.

The state committee's order which is questioned approved and purported to make final a plan submitted by the county committee of Goshen County. The plan called for the organization of all school districts in Goshen County into a single countywide unified district. The objectors sought review in the district court under the administrative procedure act. The district court upheld, with minor exceptions, all actions of the state committee.

Having found that certain errors existed in the description of boundaries and that further action was necessary with regard to a fair and equitable distribution of debts and assets, the district court ordered correction to be made in the boundary descriptions and proper distribution of debts and assets to be made. In other respects, action of the state committee was affirmed and approved. The objectors who sought review in the district court have appealed to our court.

The first assignment made by appellants is that there is no statutory authority for county committees or for the state committee to reorganize or unify school districts which are already unified according to the definition contained in § 21.1-20, W.S.1957, 1971 Cum.Supp. In this connection, appellants point out that all eight districts in Goshen County had high schools prior to any attempted reorganization. They therefore claim all districts involved were already unified and could not be reorganized.

A decision on this first assignment is not necessary for our disposition of the matter before us. However, we have concluded the case should be remanded for further proceedings, and we think it might be helpful in connection with such further proceedings for us to comment briefly on the first assignment.

Counsel for appellants points to the declaration in § 21.1-20, W.S.1957, 1971 Cum. Supp., to the effect that every school district with grades one through twelve is a "unified school district." He also points to the purpose expressed in § 21.1-106 of replacing the different types and kinds of school districts with unified school districts "as defined in this chapter." Additionally, counsel cites a number of sections in the reorganization law which indicate the legislature intended school districts of a county to be organized into *one or more* unified school districts, with the plural of districts being used rather consistently.

Counsel for the state committee emphasizes the provisions of § 21.1-109, W.S. 1957, 1971 Cum.Supp., and argues school districts are not free from reorganization (even if they have a high school) unless they meet the criteria standards specified by the legislature in § 21.1-109.

We think the implications of § 21.1-135 of the reorganization law cannot be overlooked. It provides:

"The state committee *may exempt* from the procedures of this chapter any *county-wide* unified school district in existence prior to the effective date of this act *which reasonably complies with the criteria of this chapter.*" [Emphasis supplied.]

■ This section strongly suggests that no school district is excluded from reorganization procedures except a countywide district which was already unified before the reorganization law, and then only if such district reasonably complies with the criteria of the law.

■ All things considered, we are unpersuaded that there is any merit in appellants' first assignment of error to the effect that all territory in Goshen County was already in unified districts and the county committee lacked the power to consolidate such districts.

We turn our attention then to another of the assignments which has to do with whether the state committee has the power, by rejecting a county plan with full criteria standards, to compel reorganization of all the county into a single countywide district.

Plan 1 which was submitted by the county committee in Goshen County contemplated that Goshen County and its eight school districts would be reorganized into a county with four new and unified districts. The state committee rejected Plan 1 and, as the law required,[1] recommended what was necessary to put the plan into proper compliance with the law. Thereupon, the county committee submitted Plan 2. However, that plan was soon withdrawn by the county committee itself.

At this point Plan 3 was submitted by the county committee to the state committee. It again was for four unified districts in Goshen County. Appellants claim Plan 3 was such that each unified district therein would meet all of the criteria requirements of § 21.1–109, W.S.1957, 1971 Cum. Supp. Appellants also claim Plan 3 contained all of the changes recommended by the state committee when it rejected Plan 1 and specified the changes necessary to put the plan into compliance with the criteria standards specified by law.

■ Plan 3 was rejected by the state committee. However, if that plan did meet the criteria standards specified by law (regardless of whether it followed all recommendations of the state committee), then and in that event it should have been accepted and not rejected by the state committee; and if the rejection was without proper reason or authority, it was arbitrary and void.

■ This court made it clear in School District No. 9, in County of Fremont v. District Boundary Board In and

For Fremont County, Wyo., 351 P.2d 106, 111, that an administrative board must have before it sufficient information for the finding of those facts upon which it pretends to act, otherwise its action will be arbitrary.[2] In keeping with that theory, we pointed out in Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission, Wyo., 446 P.2d 550, 555, that it is the duty of courts on review to ascertain whether the administrative board's findings of fact are supported by substantial evidence. We also said findings of basic facts will not be implied from ultimate findings or conclusions of law; and failure of an agency to meet its responsibilities makes its determination susceptible to the charge that its order is contrary to law.

### Is Countywide Unit Mandatory?

Let us make it very clear at this point, no law says Goshen County has to be a single countywide school district. If the state committee made that determination and for that reason refused approval of a plan submitted by the county committee, it acted without authority and in excess of its power. Counsel for appellants argues the state committee decided it would settle for nothing less than a single countywide unified district in Goshen County; that it therefore rejected Plan 3; and that it prepared on its own initiative Plan 4 and "forced" the county committee to accept such plan by threatening that, if the county committee did not submit Plan 4, the state committee could and would put it into effect.

We doubt that the allegation to the effect that the county committee was "forced" has been substantiated, because the county committee must be presumed to know the law and the extent of the state committee's powers. However, if Plan 3, which was submitted by the county com-

---

1. Section 21.1–112(g), W.S.1957, 1971 Cum.Supp.

2. See also Clear Creek Cattle Co. v. Davis, Wyo., 384 P.2d 719, 720; and Marathon

Oil Company v. Welch, Wyo., 379 P.2d 832, 835–836.

mittee before and in preference to Plan 4, reasonably met the minimum criteria requirements as prescribed in § 21.1–109 of the school district organization law, then and in that event it should have been approved and not rejected by the state committee.[3]

Section 21.1–109 requires unified school districts to be organized as efficient administrative units; it requires all territory within a district to be contiguous; it specifies requirements for trustee residence areas; it requires that consideration is to be given to a ratio between membership and assessed valuation "as nearly equalized as practicable" among the unified districts in the county; and it requires reasonable equality for educational opportunity and services within each unified district.

■ We fail to find anything in the record which would justify a conclusion that Plan 3 would not have reasonably met all of the criteria requirements set forth in § 21.1–109. We have heretofore made it clear that the state committee, as an administrative agency, had to have sufficient information before it to justify its determination that Plan 3 would not meet the necessary criteria requirements, otherwise its action must be considered arbitrary.

If such evidence and information had been offered to the state committee, the record fails to disclose it. Not only do the appellants contend there was an absence of evidence and information before the state committee with respect to crtieria considerations, but they point out that during review by the district court they attempted to offer evidence tending to show that Plan 3 reasonably met all criteria requirements. They also claim and offered to show that Plan 3 complied with those recommendations which were made by the state committee when it rejected Plan 1.

When such evidence was offered during the district court review, counsel for the state committee objected and the court sustained the objection. Thus, regardless of any information the state committee may have had, appellants were denied an opportunity to question or counter it.

Section 21.1–112(g), W.S.1957, 1971 Cum.Supp., provides, when a plan of organization becomes an approved plan (as Plan 4 did in this case), the state committee shall make an order establishing the unified district according to the approved plan of organization. In this case the state committee made its decision and order approving Plan 4 on November 29, 1971. Section 21.1–112(g)· then specifies, "said order shall be the final administrative determination."

In § 21.1–128, W.S.1957, 1971 Cum. Supp., the legislature has said an appeal may be taken from any final decision of the state committee by any citizen or taxpayer of the territory involved, to the district court. Also, both Rule 72.1(a), W.R. C.P., and § 9–276.32(a), W.S.1957, 1971 Cum.Supp., provide in general that any person who is aggrieved by a final decision of an agency in a contested case or by any "other agency action" may have a review in the district court.

■ Thus, whether we think of the November 29, 1971 order of the state committee as having been made in a contested case or as being merely "other agency action," appellants as citizens and taxpayers are guaranteed the right of review. They filed their petition for review in the district court December 28, 1971, which was within thirty days and therefore timely.

It has been suggested that the state committee rejected Plan 3 November 15, 1971; and that, this being "agency action," aggrieved persons could have and should have appealed within thirty days from such action. We do not pretend to say action taken November 15 was not "agency action." We need not decide, however, whether some aggrieved persons could have appealed from that order.

Suffice it to say, § 21.1–112(g) defines the November 29, 1971 decision and order

---

3. See § 21.1–112(g), W.S.1957, 1971 Cum. Supp. See also Board of Trustees of

School District No. 3 v. District Boundary Board, Wyo., 489 P.2d 413, 416.

of the state committee as the "final administrative determination"; § 21.1–128 gives a special appeal by any citizen or taxpayer from "any final decision" of the state committee; also Rule 72.1(a) and § 9–276.-32(a) both allow appeals from any action which is not involved in a contested case. Therefore, irrespective of possible appeals at other stages or from other orders, the appeal actually taken from the *final decision* of the state committee (of November 29, 1971) is expressly authorized by two statutes and a rule.

Actually, we are not dealing with a contested case.[4] The definition of a contested case, in § 9–276.19(a), W.S.1957, 1971 Cum.Supp., is a proceeding in which legal rights of a party are required by law to be determined after an opportunity for hearing. We held, in Scarlett v. Town Council, Town of Jackson, Teton County, Wyo., 463 P.2d 26, 29, the phrase "after an opportunity for hearing" meant opportunity for a trial-type hearing. It is apparent that the citizens and taxpayers here involved did not have a trial-type hearing before the county committee and had no hearing before the state committee.

Inasmuch, then, as the district court review did not involve a contested case, we must give attention to Rule 72.1(h), W.R. C.P. It specifies that under certain circumstances, the court in contested cases shall order additional evidence to be taken before the agency upon conditions determined by the court. Then, the last sentence of the rule states: "In all cases other than contested cases additional material evidence may be presented to the court." The only limiting factor seems to be materiality.

The review herein involved is quite different from the usual review of an administrative action. The review pertained to action of the state committee. The state committee merely reviews the recommendations of the county committee. The county committee was the only agency which held any semblance of a hearing. Section 21.-

1–112(g), W.S.1957, 1971 Cum.Supp., provides the state committee shall review all plans submitted by the county committee and either approve or reject such plan. The statutes do not provide for any hearing by the state committee; it merely reviews plans submitted by the county committee. Section 21.1–118, W.S.1957, 1971 Cum.Supp., provides that the county committee shall prepare and submit a plan to the state committee after holding a public hearing or hearings.

In light of what we have said, it becomes apparent this case must be remanded to the district court for the taking of evidence and a determination of whether Plan 3 of the county committee reasonably met the statutory criteria requirements. We say whether it *reasonably* met such requirements because it is apparent in §§ 21.-1–109 and 21.1–135 that the legislature did not mean to require absolute equality or perfection.

If Plan 3 be found substantially deficient, then rejection by the state committee could be justified. On the other hand, if Plan 3 offered a plan of reorganization sufficient to meet statutory requirements, the state committee should be ordered to approve it and carry out its intents and purposes.

A question has been raised as to whether a remand from the district court ought to be to the former county committee or the state committee. Our attention has been directed to what was done in that connection in Lund v. Schrader, Wyo., 492 P.2d 202, 208. Irrespective of what may have been said and done in the *Lund* case, we are convinced the county committee of Goshen County has, for all intents and purposes, turned its duties over to the state committee and has itself passed out of existence.

Therefore, without pretending to quibble or be overtechnical about who has authority to carry out administrative details, it makes sense from a practical standpoint to

---

4. See Lund v. Schrader, Wyo., 492 P.2d 202, 209–210.

leave such further administrative duties as may be necessary to the state committee. Even if the state committee's rejection of Plan 3 and acceptance of Plan 4 is approved, corrections and adjustments will be necessary in connection with boundary lines and making a fair and equitable division of debts and assets.

On the other hand, if it is determined that Plan 3 should have been approved, we see no reason why the state committee cannot be directed to make whatever minor corrections and adjustments are necessary to make Plan 3 operative as intended by the county committee when it submitted such plan. This would include any necessary corrections or adjustments of boundary lines; adjustments, if needed, where county lines are crossed; adjustments, if needed, for a fair and equitable division of debts and assets; and any rearrangement which may have to be made to meet statutory and constitutional requirements pertaining to trustee areas and trustees.

The appellants in this case have advanced thirteen issues, claiming error in connection with all thirteen matters and suggesting error in connection with any one of their assignments would entitle them to relief. In one of these assignments, appellants list twenty-three findings of fact set forth in the decision and order of the state committee and argue that each finding of fact is without support by any substantial evidence.

We have not pretended to enumerate and discuss in detail each of the thirteen assignments of error advanced by appellants. However, we have considered each assignment carefully and are convinced appellants can obtain an answer to each of their questions in the additional proceedings required—if we have not answered the question in this opinion.

Remanded to the district court for further proceedings consistent with this opinion.

PARKER, Justice (dissenting).

I would affirm the judgment of the district court.